** NOT PRINTED FOR PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARY HARMON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 1-12-CV-571 |
| v. | § | |
| | § | JUDGE RON CLARK |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT, et al., | § | |
| | § | |
| *Defendants.* | § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' Motion for Summary Judgment.  [Doc. # 38].

Defendants Linda Bounds, Barbara Hardeman, and Beaumont Independent School District have

moved for summary judgment pursuant to Fed. R. Civ. P. 56.  The court grants summary

judgment in this matter because there is no genuine issue of material fact and the movants are

entitled to a judgment as a matter of law.[1]

## I.    Background

This matter arises out of a series of events at Bingman-Blanchette Elementary School

("Blanchette").  Blanchette is within Beaumont Independent School District ("BISD").  During

the relevant period, Defendant Bounds was a physical education teacher at Blanchette and

---

[1] Plaintiff Harmon did not file a timely response to Defendants' motion for summary judgment.  Several days after the response period ended, Plaintiff filed a motion for leave to file a response.  [Doc. # 42].  The following day, Plaintiff filed the response.  [Doc. # 45]. Defendants have objected to Plaintiff's motion for leave to file.  [Doc. # 49].  Plaintiff also moved to supplement her response.  [Doc. # 50].  Defendants in this matter are entitled to summary judgment, regardless of whether Plaintiff's late filed response is considered; therefore, Plaintiff's motions for leave [Doc. ## 42, 50] are DENIED AS MOOT.

1

Defendant Hardeman was the school's principal.  E.J., Plaintiff Harmon's seven-year-old grandson, was a student at Blanchette.  Plaintiff Harmon was employed as a kindergarten teacher and van driver for Greater Good Hope, a private school affiliated with a church in Beaumont. Part of her duties included picking up children from Blanchette to take them to the after-school program at Greater Good Hope.

On November 12, 2010, Defendant Bounds paddled E.J.[2]  Plaintiff Harmon asserts that when she picked E.J. up from Blanchette, she noticed he was in "pain and metal distress."  When she inquired into why, E.J. allegedly told her that he had been paddled by Defendant Bounds. After examining E.J.'s bruises, Plaintiff Harmon called 911 to report the alleged assault.  The 911 operator allegedly refused to send a police officer to investigate unless Plaintiff Harmon had paperwork proving that she did not give the school the right to administer corporal punishment. Plaintiff Harmon subsequently went to the school's main office to inform Defendant Hardeman of the incident and obtain a copy of the annual registration form she had allegedly signed, which denied school district employees the right to use corporal punishment on E.J.

While at Blanchette, Plaintiff Harmon interacted with Defendant Bounds and E.J.'s classroom teacher Ruth Malveaux,[3] who informed her that E.J. and the other boys had been "cutting up" in class, and Malveaux had given Defendant Bounds permission to paddle E.J. Plaintiff Harmon informed Malveaux and Defendant Bounds that she had never given permission for corporal punishment to be used on E.J., primarily because he suffered from bipolar disorder and learning disabilities.  When Malveaux and Defendant Bounds allegedly appeared

---

[2] The pleadings are inconsistent about the number of times Defendant Bounds struck E.J. It is immaterial to this case whether Defendant Bounds struck E.J. five or seven times.

[3] Ruth Malveaux was also named as a defendant in this suit.  After the commencement of this action, she passed away and Plaintiff has not named her estate as a defendant in this matter.

2

unsympathetic, Plaintiff Harmon alleges that she left Blanchette.  Plaintiff Harmon decided to keep E.J. home from school the next day, and, asserts that because his injuries had not improved, she took E.J. to the emergency room on November 14, two days after the incident.

During the first week of December 2010, Plaintiff Harmon met with BISD Deputy Superintendent Dr. Shirley Bonton and Defendant Hardeman to discuss the incident.  During this meeting, Defendant Hardeman allegedly approved the actions of Malveaux and Defendant Bounds, stating that Plaintiff Harmon had given Malveaux permission to use corporal punishment.  After Plaintiff Harmon disputed this statement, it became apparent that Harmon had opted out of corporal punishment at E.J.'s former elementary school, which is located with the BISD.  Plaintiff Harmon asserts that this form should be contained in E.J.'s transfer paperwork, however, no such form was ever located.  According to Plaintiff Harmon, Blanchette had never given her any form regarding permission or denial of permission to use corporal punishment and, Defendant Hardeman admitted that these pertinent registration forms were never sent to Blanchette parents.  Although BISD officers allegedly reported the incident to the Jefferson County District Attorney's office, presumably at Plaintiff Harmon's request, the District Attorney declined to prosecute the case.  E.J. no longer attends Blanchette.

In January 2011, another incident occurred at Blanchette, between Defendant Bounds and Plaintiff Harmon.  Plaintiff Harmon, in her capacity as a van driver, was at Blanchette to pick up students.  Defendant Bounds was assisting with student pick up.  Defendants allege that Plaintiff Harmon was taking pictures and disrupting traffic flow.  Plaintiff Harmon alleges that Defendant Bounds boarded her van and stared at her ominously.  Defendant Hardeman later contacted Plaintiff Harmon's employer, to request that Plaintiff Harmon not disrupt traffic flow.  Plaintiff

Harmon's employer addressed the issue with her, but she was not disciplined.  Plaintiff Harmon later stopped driving the van, purportedly to avoid dealing with Defendant Bounds.

Plaintiff Harmon filed this action on November 30, 2012.  Her claims under 42 U.S.C. § 1983 were based in violations of the First and Fourteenth Amendments.  Defendants moved to dismiss based on the applicable statute of limitations.  This court dismissed all of Plaintiff's claims, save for the First Amendment retaliation claims that accrued after November 30, 2010, namely, the ominous staring, the incident in the pick-up line, the call to Plaintiff's employer.  Defendants have moved for summary judgment on those claims.  [Doc. # 14].

## II.    Applicable Law

A. <u>Standard of Review</u>

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,*

475 U.S. at 586, 106 S. Ct. at 1356.  Fed. R. Civ.  P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue.  *Id.*  If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  But, the court is not going to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)(citations omitted); *see also* Local Rule CV-56(c) and Appendix 1, ¶ 3 of the Order Governing Proceedings in this case. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

B.  First Amendment Claims Under 42 U.S.C. § 1983

Claims under 42 U.S.C. § 1983 require that a plaintiff was "deprived of a right or interest secured by the Constitution and the laws of the United States" and "that the deprivation occurred

under color of state law." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir.

1995) (citing *West v. Atkins,* 487 U.S. 42, 28, 108 S. Ct. 2250, 2254 (1988)).

      The First Amendment protects not only direct government action limiting free speech,

but also protects against retaliatory government action, meant to inhibit free speech, as if the

government could achieve through indirect means what it could not achieve through direct

action, the government could stymie free speech. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.

2002). When plaintiffs are not government employees or otherwise contractually involved with

the government actors, they must show "'(1) they were engaged in constitutionally protected

activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse

actions were substantially motivated against the plaintiffs' exercise of constitutionally protected

conduct.'" *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (quoting *Keenan*, 290 F.3d at

258). Plaintiffs must be able to show that their exercise of free speech was, in some way,

curtailed. *Keenan*, 290 F.3d at 259.

    C.  <u>Qualified Immunity For The Individual Defendants</u>

      Even where an action exists under 42 U.S.C. § 1983, a government official may be

protected by qualified immunity. "The doctrine of qualified immunity protects government

officials from civil damages liability when their actions could reasonably have been believed to

be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir.2011) (en banc). It protected "all but

the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S.

335, 341, 106 S.Ct. 1092, 1096 (1986). "Therefore, a plaintiff seeking to overcome qualified

immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that

6

the right was 'clearly established' at the time of the challenged conduct.'"  *Whitley v. Hanna*,

726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

   D.  School District Liability Under 42 U.S.C. § 1983

      In order for a governmental entity to be liable under 42 U.S.C. § 1983, the plaintiff must

establish "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights

whose 'moving force' is the policy or custom.'"  *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d

244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.

2001)).  The policymaker must be one with the authority to make final decisions regarding

policy.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926 (1988).  In Texas,

the only policymaker for a school district is the Board of Trustees.  Tex. Educ. Code § 11.151(b);

*Rivera*, 349 F.3d at 247.  "'Policy' consists of a 'policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers.'"  *Gonzalez v. Ysleta Indep.

Sch. Dist.*, 996 F.2d 745, 753 (5th Cir. 1993) (quoting *Monell v. Dep't of Soc. Servs.*,436 U.S.

658, 690; 98 S. Ct. 2018, 2036 (1978)).

## III.    Discussion

   A.  Defendants Are Entitled To A Judgment As A Matter Of Law On Plaintiff Harmon's
      First Amendment Claims

      Defendants are entitled to summary judgment on Plaintiff Harmon's First Amendment

retaliation claims because there are no issues of material fact relating to the events that occurred

after November 30, 2010.  In order to establish a First Amendment retaliation claim as an

ordinary citizen, plaintiff must show the following: (1) plaintiff engaged in constitutionally

protected activity; (2) defendant's actions caused plaintiff to suffer an injury "that would chill a

person of ordinary firmness from continuing to engage in that activity;" and (3) plaintiff's

exercise of constitutional protected conduct substantially motivated defendant's conduct. *Keenan*, 290 F.3d at 258.  In a light most favorable to the non-moving party, Plaintiff Harmon has failed to show any of the requirements for a First Amendment retaliation claim, let alone all of them.

### 1.  Plaintiff Harmon did not engage in constitutionally protected activity

Plaintiff has raised the issue as to whether Plaintiff Harmon was a de facto guardian of E.J.  Even assuming that she, as a grandmother and van driver, had all of the rights that a child's parents would have, which is by no means clear, she has not alleged a constitutionally protected activity.  It is unclear from Plaintiff Harmon's pleadings whether the allegedly constitutionally protected activities that occurred after November 30, 2010 were Plaintiff's complaints to the school officials or her entering the school property.  Neither of these activities falls within the score of constitutionally protected speech.  The private conversations between a parent and school personnel regarding a child's education or treatment do not fall within the scope of the matters of public concern for a First Amendment retaliation claim.  *Ryans v. Gresham*, 6 F. Supp. 2d 595, 600 (E.D. Tex. 1998); *Rodgers v. Duncanville Indep. Sch. Dist.*, No. 3-04-cv-0365-D, 2005 WL 770712, at *3 (N.D. Tex. Apr. 5, 2005).  Parents do not have the unfettered right to enter school property or to disobey the directions of a teacher supervising students.  *See Ryans v. Gresham*, 6 F. Supp. 2d at 601-02.  As Plaintiff Harmon was not engaging in protected speech, there can be no claim for retaliation.

### 2.  Defendants' actions would not have chilled a person of ordinary firmness

Defendants' conduct, including the ominous staring, the incident in the pick-up line and the call to Plaintiff Harmon's employers are not the sort of conduct that would chill a person of ordinary firmness.  Not all actions, even if they have a chilling effect on a plaintiff's speech, rise

8

to the level of a constitutional violation, because the standard is objective, not subjective. *Keenan*, 290 F.3d at 258. Actions that are trivial or minor do not violate the First Amendment. *Id.*

In *Keenan*, the plaintiffs were subjected to police harassment, including being detained for more than thirty minutes for a minor traffic violation, which was later dismissed, while the office had their guns pointed at the plaintiffs and on a separate occasion being arrested, charged, and put to trial for a misdemeanor for which the plaintiff was acquitted. *Id.* at 259. The Fifth Circuit found these actions to the sort that would chill a person of ordinary firmness. Brief traffic stops with probable cause, however, would not chill a person of ordinary firmness. *Benson v. McKinney*, Civil No. 07-0672 (W.D. La. Apr. 16, 2009). Even in a light most favorable to Plaintiff Harmon, being stared at by a teacher, even if she entered the van, is not the sort of conduct that would chill a person of ordinary firmness. Defendant Bounds was responsible for assisting children and maintaining order in the pick-up area. While Plaintiff Harmon avers that she stopped driving the van as a result of these interactions, the standard is not subjective, it is objective and Plaintiff Harmon fails to meet it.

Defendant Hardeman's call to Plaintiff Harmon's employee also does not rise to the level of an action that would chill the speech of a person of ordinary firmness. A phone call to the Texas Workforce Commission about a plaintiff using the office resources to litigate a case against the federal government, which allegedly resulted in a policy change regarding computer usage, would not chill a person of ordinary firmness. *Smart v. Holder*, 368 Fed. App'x 591, 592-93 (5th Cir. 2010). Defendant Hardeman's phone call resulted in no adverse consequences for Plaintiff Harmon, and indeed, no consequence other than discussion with her supervisor. This would not chill a person of ordinary firmness.

9

3.  *Plaintiff Harmon did not engage in protected conduct and Defendants did not take adverse action*

The third prong of the First Amendment retaliation analysis requires the government official's adverse conduct was substantially motivated by plaintiff's constitutionally protected conduct.  As Plaintiff Harmon engaged in no constitutionally protected conduct and Defendants did not take any actions that would chill a person of ordinary firmness, there Plaintiff Harmon could not establish this prong.

B.  Defendant Bounds And Defendant Hardeman Are Entitled To Qualified Immunity

Defendant Bounds and Defendant Hardeman are entitled to qualified immunity.  Public officials are shielded by qualified immunity when acting within the scope of their employment.  *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 279 (5th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S. Ct. 2727, 2736-39 (1982)).  Plaintiffs can only overcome qualified immunity if they can show the violation of a right, which was clearly established at the time of the conduct.  *Whitley*, 726 F.3d at 638.  As Plaintiff Harmon has failed to show the violation of a constitutionally protected right, Defendant Bounds and Defendant Hardeman of entitled to qualified immunity.

C.  Defendant BISD Is Not Liable Because The Board Of Trustees Promulgated Not Official Policy

Even if Plaintiff Harmon could establish a fact issue as to whether the staring incident or the phone call constituted a constitutional violation in this matter, she could not recover from BISD.  Under 42 U.S.C. § 1983, governmental entities, like school districts, are only liable if there is an official policy, promulgated by a policy maker, which was a moving force behind the constitutional violation.  *Rivera*, 349 F.3d at 247.  In a Texas school district, the only official policy maker is the Board of Trustees.  Tex. Educ. Code § 11.151(b); *Rivera*, 349 F.3d at 247.

Even in a light most favorable to Plaintiff Harmon, The Board of Trustees promulgated no official policy, nor custom, which could have led to the alleged violations of Plaintiff Harmon's First Amendment rights.  As the Board of Trustees did not have such a policy, Plaintiff Harmon cannot recover against it.

### IV.    Conclusion

Defendant Bound, Defendant Hardeman, and Defendant BISD are entitled to a judgment as a matter of law because there are no material facts at issue.  Defendants' motion for summary judgment [Doc.  38] is GRANTED.

So **ORDERED** and **SIGNED** this **7**   day of **April, 2014.**

_____
Ron Clark, United States District Judge